IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs  November 7, 2003

## ANTUAN J. FOXX v. JAMES NEELY, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 02-1743-1     Irvin H. Kilcrease, Jr., Chancellor**

_____

**No. M2003-01634-COA-R3-CV - Filed November 21, 2003**

_____

This is an appeal by a former employee whose unemployment compensation benefits were denied on the basis of work-related misconduct, specifically for allegedly refusing to perform certain work as requested by a supervisor.  The claim for benefits was denied by the Employment Security Division of the Tennessee Department of Labor and Workforce Development. The employee filed a petition with the Chancery Court for judicial review.  The Chancery Court affirmed.  The employee asserts that the denial of his claim is not supported by substantial and material evidence.  We find there is substantial and material evidence to support the denial of benefits and affirm the trial court.

### Tenn.R. App. P.3 Appeal as of right; Judgment of the Chancery Court
### Affirmed and Remanded

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

Frank J. Scanlon, Nashville, Tennessee, for the appellant, Antuan J. Foxx.

Paul G. Summers, Attorney General and Reporter; and Warren A. Jasper, Assistant Attorney General, for the appellee James Neely, Commissioner, Tennessee Department of Labor and Workforce Development.[1]

---

[1]James Neely succeeded Michael Magill as Commissioner of the Tennessee Department of Labor and Workforce Development.  Accordingly, James Neely has been substituted as the party defendant pursuant to Rule 19(c) Tenn. R. App. P. (when an officer of the state ceases to hold office, the officer's successor is automatically substituted as a party).

**MEMORANDUM OPINION**[2]

Antuan J. Foxx (Foxx) was employed by Charging Systems International, Inc. (CSI). CSI manufactures battery chargers. Foxx's primary function was to mount transformers on circuit boards. Foxx was initially compensated on an hourly basis; however, his compensation was changed to a piece-work rate by which he was paid by the number of transformers he mounted to circuit boards. Nevertheless, CSI reserved the right to assign different work to Foxx with the understanding that Foxx may be paid by different methods and amounts of compensation for the other work.

On November 14, 2001, Foxx's supervisor instructed Foxx to work at a different area to perform a different function. Specifically, Foxx was asked to mount a transformer for a special order. The new assignment required more time to assemble than the mounting process at Foxx's primary work station. Realizing that the new assignment was more time consuming, Foxx requested a specific increase in his piece-work rate of payment in order to not reduce the amount of money he would make in a day. Though company officials refused to give a specific increase, Foxx was assured they would "figure out" a rate of compensation later. Foxx refused to perform the new duties until he was assured of his exact pay. His supervisor admonished him and asked Foxx if he would be willing to sign a statement confirming his refusal to accept the assignment. Foxx ultimately agreed to do the requested work and reported to the appropriate area of the plant to do the work for the special order. Upon arriving at the new work station, Foxx determined that there was insufficient work for him to do, specifically that there was an insufficient supply of transformers to remain busy. Foxx unilaterally left the new assignment, returned to his normal work station, and did not subsequently inquire to see if his services were needed for the special order. Later that evening the CSI production manager discovered that not all of the special order had been assembled and ascertained that Foxx had left his new assignment. The following day Foxx was terminated for insubordination for not assembling the special order as instructed.

Foxx applied for unemployment compensation benefits. His claim was denied on the basis that Foxx was guilty of work-related misconduct.

The issue presented is whether there is substantial and material evidence to support the decision of the Department of Labor and Workforce Development that Foxx was guilty of work-related misconduct disqualifying him for benefits under Tenn. Code Ann. § 50-7-303(a)(2).

---

[2]Tenn. R. Ct. App. 10 states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

The standard for judicial review of decisions of the Board of Review granting or denying unemployment compensation benefits is set forth in Tenn. Code Ann. § 50-7-304(I)(2) and (3). The pertinent provisions are as follows:

(2) The chancellor may affirm the decision of the [Board of Review] or . . . may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are: (A) In violation of constitutional or statutory provisions; (B) In excess of the statutory authority of the agency; (C) Made upon unlawful procedure; (D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (E) Unsupported by evidence which is both substantial and material in light of the entire record.

(3) In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact. No decision of the board shall be reversed, remanded or modified by the chancellor unless for errors which affect the merits of the final decision of the board. . . .

When reviewing the decision of the Board of Review, the issue is not whether there is evidence in the record that might contradict the decision of the Board of Review, but whether there is substantial evidence to support that decision. *Jackson v. Bible*, 611 S.W.2d 588, 590 (Tenn. Ct. App.1980). So long as there is any evidence that supports the agency's factual findings, judicial review is limited to questions of law. *Id.* at 590. It is generally held that courts must affirm the Board of Review if there is any evidence to support the Board's decision, unless the Board's decision is contrary to the law. *Perryman v. Bible*, 653 S.W.2d 424, 429 (Tenn. Ct. App.1983).

The Board of Review found that there was sufficient evidence of misconduct, that his failure to follow his supervisor's instructions constituted work-related misconduct and that such conduct disqualified him from unemployment benefits as work-related misconduct under Tenn. Code Ann. § 50-7-303(a)(2). The Chancellor affirmed the decision of the Board of Review, finding the decision was supported by substantial and material evidence, and dismissed the Petition for Judicial Review. We also find that there is substantial and material evidence to support the decision.

Accordingly, the judgment of the trial court is affirmed. Costs are assessed against the Appellant, Antuan J. Foxx.

_____
FRANK G. CLEMENT, JR., JUDGE